Lisel M. Ferguson (Bar No. 207637)
lisel.ferguson@rimonlaw.com
RIMON PC
3579 4th Ave.
San Diego, CA  92103
Telephone: (619) 848-7329

Attorney for Plaintiff PURBLACK, INC.

# UNITED STATES DISTRICT COURT FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURBLACK, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>CENTRAL COAST AGRICULTURE, INC.,<br><br>      Defendant. | Case No.: **'25CV3654 H    MMP**<br><br>**COMPLAINT FOR:**<br>(1) **TRADEMARK INFRINGEMENT 15 U.S.C. § 1114;**<br>(2) **UNFAIR COMPETITION UNDER THE LANHAM ACT 15 U.S.C. §§ 1114, 1125(a);**<br>(3) **INJUNCTIVE RELIEF UNDER THE LANHAM ACT 15 U.S.C. § 1116;**<br>(4) **UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17790, AND**<br>(5) **DECLARATORY RELIEF**<br><br>**(Trademark infringement)**<br><br>[PLAINTIFF DEMANDS JURY TRIAL PER F.R.C.P. 38] |

Plaintiff PURBLACK, INC. (hereinafter referred to as "Plaintiff" or "PURBLACK") alleges as follows:

## JURISDICTION

1. This action arises under the Lanham Act, 15 U.S.C. §§ 1114, 1116, and 1125(a), and related claims.  Accordingly, this Court has jurisdiction of this civil action under and by virtue of 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and pursuant to the doctrine of supplemental jurisdiction.

COMPLAINT

## VENUE

2. Venue in this action properly lies in the Southern District of California under 28 U.S.C. §§ 1391 and 1400(a) as the Defendant sells goods to clients within California and this judicial district, Defendant's principal place of business is located in California, the Defendant has conducted business, published websites and has derived significant income from the sale of goods to the public within this judicial district.

## THE PARTIES

3. Plaintiff, PURBLACK, is, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Texas with its principal place of business in the County of San Diego, State of California.

4. Plaintiff is informed and believes, and based thereon alleges, that Defendant CENTRAL COAST AGRICULTURE, INC. ("CENTRAL COAST") is, and at all times herein mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business in the County of Santa Barbara, State of California and conducting business nationwide including the County of San Diego.

## BACKGROUND FACTS

5. Since June 17, 2012, Plaintiff has continuously sold various products under the trademark LIVE RESIN. Plaintiff sells high quality natural nutritional supplements engineered for peak performance. Plaintiff's products are sourced, formulated and manufactured with precision. Many of Plaintiff's goods are offered and sold under the trademark "LIVE RESIN". Plaintiff's products are recognized by the consuming public under its "LIVE RESIN" trademark.

6. Plaintiff has not only used its marks LIVE RESIN ("Trademarks") to brand its goods; it has offered and created a unique website and prepared marketing material and press releases for its goods sold under its Trademarks. Plaintiff has also utilized its Trademarks extensively in online advertising, trade shows, and trade. Plaintiff has spent over ten years promoting its goods and utilizing its LIVE RESIN trademarks.

7. Throughout the United States, as well as many foreign Countries, Plaintiff has

promoted itself under its Trademarks as a provider of high-quality products by using its Trademark on its products, website, advertising and in connection and in conversation. The consuming public associates Plaintiff's Trademark with its goods.

8. Plaintiff has been continuously utilizing its Trademarks for its goods in commerce since June 2012.

9. Plaintiff owns three United States Patent and Trademark Office ("USPTO") registrations and one pending trademark for the mark "LIVE RESIN". (hereinafter "LIVE RESIN Trademarks") These marks were under license and recently were fully assigned by Adaptive Energy to PURBLACK. These marks are as follows:

    1-LIVE RESIN Reg. No. 4643806 issued on November 25, 2014 with a first use date of September 9, 2012 for Class 5- Dietary food supplements; Dietary supplement for eliminating toxins from the intestinal tract; [Dietary supplemental drinks;] Dietary supplements; Dietary supplements for human consumption; Health food supplements; Herbal supplements; Herbal supplements for sleeping problems; Mineral food supplements; Mineral supplements; Nutraceuticals for use as a dietary supplement; Nutritional supplements; Nutritional supplements in the form of [semisolids and] liquids;

    2- LIVE RESIN Reg. No. 7342152 issued on April 2, 2024 with a first use date of September 9, 2012 for Class 1- Ingredients, namely, plant extracts used in the manufacture of a wide variety of flavored goods and scented goods including supplements, skincare products and foods, with none of the aforementioned containing hemp or CBD.

    3- LIVE RESIN Reg. No. 7198610 issued on October 24, 2023 with a first use date of September 9, 2012 for Class 3- Non-medicated and non-therapeutic skin care preparations, namely, for skin renewal and use on stretch marks, with none of the aforementioned containing hemp or CBD.

    4-LIVE RESIN Serial No. 97065904 Published May 9, 2023, no use claimed yet, Class 30 Chocolate and kombucha tea, with none of the aforementioned containing hemp or CBD. (Exhibit A are the Registration Certificates and the Application for these respective

trademarks)

10. Defendant is using the term "Live Resin" to sell its products and has filed trademarks that include this mark. Defendant's website located at www.rawgarden.farm uses this mark and is marketing products which infringe upon Plaintiff's rights in the LIVE RESIN marks. (Attached as Exhibit B are screenshots of relevant pages of the website).

11. Plaintiff is informed and believes, and thereon alleges that the Defendant has passed its products off in a manner calculated to deceive Plaintiff's customers and members of the general public, and that Defendant has copied Plaintiff's Trademark in an effort to confuse the public into believing that Defendant and Plaintiff are one and the same, or that Defendant is connected in some way to Plaintiff.

12. Defendant also has alleged to the United States Patent and Trademark Office (USPTO) that Plaintiff's LIVE RESIN mark is descriptive which is diluting and harming Plaintiff's rights in its marks.

13. Plaintiff has sent cease-and-desist letters to Defendant and asked Defendant to cease the use of the name "LIVE RESIN" as it is confusingly similar to Plaintiff's Trademark. Defendant has not ceased from using the mark.

14. Many of Plaintiff's customers, and potential customers, have already complained to Plaintiff stating that they were confused as to the difference between Plaintiff's and Defendant's products. This is further harmful as Plaintiff sells high end nutritional supplements and Defendant sells products which contain cannabis.

15. The natural, probable and foreseeable result of Defendant's wrongful conduct has been to deprive, and it will continue to deprive, Plaintiff of the benefits of the sale of its products and to deprive Plaintiff of its goodwill, and to injure Plaintiff's relations with present and prospective customers.

16. Plaintiff is informed and believes, and based thereon alleges, that it has lost, and will continue to lose, substantial revenues from Defendant's use of the Mark or term "Live Resin," to market and sell its electronic cigarettes, vape pens, CBD cartridges, herbs for smoking,

cartridges filled with chemical flavoring and CBD. Defendant's wrongful conduct will also deprive Plaintiff of the opportunity of expanding its goodwill.

17. Defendant has filed for numerous trademarks with the United States Patent and Trademark Office ("USPTO") which include the term "Live Resin" these marks have been filed in numerous classes of goods and services. The classes of goods and services include the following: 003, 030, and 034. Of these numerous marks there are a few which are still alive and many have become abandoned. Attached as Exhibit C is a spreadsheet of the USPTO information on many of these marks.

18. Plaintiff has been sending cease and desist letters requesting that Defendant cease using the mark "Live Resin" starting in August of 2021. Attached as Exhibit D are the letters sent to Defendant. Plaintiff then filed Oppositions against Defendant's marks which include the term "Live Resin" with the first Oppositions being filed against Defendant's marks on October 4, 2022. However, Defendant continues to infringe upon Plaintiff's trademark rights in LIVE RESIN and continues to pursue trademarks which include the term "Live Resin".

19. Plaintiff is currently opposing two of Defendant's marks before the Trademark Trial and Appeal Board (TTAB). (Exhibit E is a copy of the pending Opposition) The Opposition Number is 91291799 which was filed on May 30, 2024 and the marks are the following:

| Mark | Serial No. | Status | Class of Goods |
| --- | --- | --- | --- |
| REFINED LIVE RESIN | 88983040 | Pending | 030 |
| REFINED LIVE RESIN | 88983042 | Pending | 030 |

20. In addition to the fact that Defendant is using Plaintiff's trademarks to sell its products and filing for marks which include Plaintiff's trademarks they are further harming Plaintiff's rights in its trademarks LIVE RESIN by claiming that the term "Live Resin" has become descriptive. Defendant has filed responses to Office Actions before the USPTO which disclaim the term "Live Resin" as descriptive.

21. Plaintiff has made numerous attempts to protect its Trademarks through sending cease and desist letters to both Defendant and other third parties. Most of the third parties outside of Defendant have ceased use of Plaintiff's LIVE RESIN mark and have abandoned trademark applications. As set forth above Plaintiff has filed Oppositions against trademarks which have been filed by Defendant.

22. Plaintiff is informed and believes, and based thereon alleges, that unless enjoined by this Court, Defendant will continue their current course of conduct, wrongfully using, infringing upon, selling and otherwise profiting from Plaintiff's LIVE RESIN trademarks.

23. As a direct and proximate result of the acts alleged above, Plaintiff has already suffered irreparable damage and lost profits. Plaintiff has no adequate remedy at law to redress all of the injuries that Defendant has caused and intends to cause by its conduct. Plaintiff will continue to suffer irreparable damage and sustain loss of profits until Defendant's actions alleged above are enjoined by this Court.

24. As a direct and proximate result of the acts alleged above, Plaintiff seeks damages to compensate it for lost profits and loss of goodwill that Defendant has caused.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement [15 U.S.C. § 1114])

25. Plaintiff hereby incorporates paragraphs 1 through 24 above by reference as though fully set forth herein.

26. The actions of Defendant described herein constitute infringement of the LIVE RESIN Trademarks in violation of section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

27. Defendant's willful, deliberate and unauthorized use of the LIVE RESIN Trademarks have caused confusion and is likely to continue causing confusion, mistakes and deception because consumers are likely to believe that Defendant's products are associated with, connected to, affiliated with, authorized by, endorsed by, and/or sponsored by Plaintiff, in violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

28. As a direct and proximate result of Defendant's unauthorized use of the LIVE

RESIN Trademarks, Defendant has damaged and will continue to damage Plaintiff's goodwill and reputation, and has caused and is likely to continue causing Plaintiff a loss of sales and profits. Defendant's actions have caused and will continue to cause irreparable harm to Plaintiff and to the public, who are confused by Defendant's unauthorized use of the LIVE RESIN Trademarks, unless restrained and enjoined by this Court. Plaintiff has no adequate remedy at law to prevent Defendant from continuing its infringing actions and from injuring Plaintiff.

29. As a further direct and proximate result of Defendant's actions, Plaintiff has been damaged and will continue to sustain damage and is entitled to receive compensation arising from its lost sales, lost profits, and efforts necessary to minimize and/or prevent consumer confusion, in an amount to be proven at the time of trial. In addition, Plaintiff is entitled to disgorge Defendant's profits and is entitled to interest and to its attorney's fees and costs incurred by bringing this action, all in an amount to be proven at the time of trial. Plaintiff is further entitled to injunctive relief as set forth above, and to all other and further forms of relief this Court deems appropriate.

30. The damages sustained by Plaintiff as a result of the conduct alleged herein should be trebled in accordance with 15 U.S.C. § 1117(b).

## SECOND CLAIM FOR RELIEF

### (Unfair Competition Under Lanham Act [15 U.S.C. § 1125(a)])

31. Plaintiff incorporates by reference paragraphs 1 through 30 herein above as though the same were set forth in full herein.

32. Plaintiff provides high quality nutritional supplements.

33. Defendant provides goods which are smoking goods which include cannabis using the same mark, "Live Resin" on their websites and on their products. The products provided by Defendant under their Infringing Marks will confuse and deceive the public into thinking that the goods sold by Defendant are Plaintiff's goods and/or produced by Plaintiff, or that there is some connection or affiliation between Plaintiff and Defendant.

34. Defendant has placed the Infringing goods in interstate commerce.

35. As a result of Defendant's acts, Plaintiff will continue to suffer harm and will lose

income from the sale of those goods diverted away by Defendant and the bad will Defendant has caused to Plaintiff's products. Further, Plaintiff will lose goodwill because of the fact that Defendant is selling cigarettes and vape products which contain cannabis. Moreover, Defendant's goods are likely to be inferior to those offered by Plaintiff, which will reflect negatively on Plaintiff, thus harming Plaintiff's business reputation. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff will be damaged and is thus entitled to relief in an amount to be determined according to proof at the time of trial.

## THIRD CAUSE OF ACTION

### (Injunctive Relief Under Lanham Act [15 U.S.C. § 1116])

36. Plaintiff incorporates by reference paragraphs 1 through 35 herein above as though the same were set forth in full herein.

37. Plaintiff is informed and believes, and based thereon alleges, that Defendant knowingly and willfully copied and is using Plaintiff's Trademarks. Plaintiff is further informed and believes, and based thereon alleges, that Defendant copied the trademark for the specific purposes of infringing upon Plaintiff's Trademarks LIVE RESIN.

38. Unless enjoined by this Court, Defendant intends to and will continue their course of conduct, wrongfully advertising, using, infringing upon, selling and otherwise profiting from Plaintiff's Trademarks. As a direct and proximate result of the acts of Defendant, Plaintiff will suffer irreparable damage and will sustain lost profits. Plaintiff will lose the benefit of advertising and goodwill for which Plaintiff has expended large sums of money, time and effort promoting during the past nine years, and Plaintiff will also lose large sums of money in diverted business.

39. Plaintiff has no adequate remedy at law to address all of the injuries Defendant has caused, and intends to cause by their conduct. Plaintiff will suffer irreparable damage and sustain loss of profits until Defendant's actions alleged herein are enjoined by this Court.

## FOURTH CAUSE OF ACTION

## (Unfair Competition and Tradename Infringement California Business and Professions Code § 17790)

40. Plaintiff incorporates by reference paragraphs 1 through 39 herein above as though the same were set forth in full herein.

41. This is a cause of action under California state law pursuant to the Business and Professions Code § 17790.

42. While continuously using the Trademarks for LIVE RESIN in the United States over twelve years, Plaintiff has developed valuable goodwill in its Trademarks, which have come to be associated exclusively with Plaintiff's business by the general public throughout the United States.

43. At all times herein mentioned, Defendant had actual knowledge of the existence of Plaintiff's use of its Trademarks.

44. Defendant's products names and use of the term "Live Resin" are deceptively similar to Plaintiff's Trademarks.  The use of these deceptively similar names by Defendant caused and will continue to cause the public, prospective customers, creditors, suppliers and others to confuse Plaintiff with Defendant and vice versa.  Plaintiff has made demand on Defendant to cease and desist using the name "Live Resin," but Defendant has continued to use this name despite Plaintiff's demand and will continue unless enjoined by this Court.

45. Plaintiff is the original user and owner of the Trademark LIVE RESIN and the name has acquired, in the minds of the purchasing public, a secondary meaning apart from its primary and descriptive significance.  It has also become a distinctive tradename denoting to the eye and mind of the public a level of care, skill, industry, reliability, and individuality resulting in a reputation for excellence and high-quality nutritional supplements throughout the United States and abroad.  Due to such reputation and public awareness, Plaintiff has established considerable goodwill in connection with the Trademarks LIVE RESIN.

46. Defendant sells goods which could be confused with those of Plaintiff.

Defendant's use of the mark "Live Resin" is identical to Plaintiff's LIVE RESIN Trademarks, and Defendant's use of that name creates a likelihood that Plaintiff's current customers, potential customers, and the general public will be confused or misled as to the source of goods because Defendant's business could appear to be affiliated with Plaintiff. Defendant's conduct amounts to unfair competition prohibited by the California Business and Professions Code.

47. Defendant threatens to, and unless restrained, will continue to use the mark "Live Resin". As a result, the general public will be misled and deceived into believing that Defendant is Plaintiff or that there is an affiliation with Plaintiff, all to the irreparable injury of Plaintiff's business and goodwill, and to the unjust enrichment of Defendant. Plaintiff has no adequate remedy at law because it is extremely difficult to ascertain the damage proximately caused to Plaintiff's business and goodwill.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief)

48. Plaintiff incorporates by reference paragraphs 1 through 47 herein above as though the same were set forth in full herein.

49. An actual and justifiable controversy has arisen and now exists between PURBLACK and CENTRAL COAST concerning their respective rights and duties.

50. Defendant CENTRAL COAST denies all of PURBLACK's rights in its Trademarks and is filing for trademarks which contain the LIVE RESIN mark. Therefore, PURBLACK requests a judicial determination of its rights and duties and a declaration as to which party's contentions are correct. A judicial determination is necessary and appropriate at this time so that PURBLACK may stop Defendant from further infringing upon its LIVE RESIN Trademarks and cease pursing trademarks which contain the term "Live Resin".

51. PURBLACK is entitled to a declaratory judgment that Defendant has no trademark interest in the "LIVE RESIN" mark of PURBLACK. PURBLACK is also entitled to a declaratory judgment that it has the right to use its LIVE RESIN Trademarks free of any claims of Defendant.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

**ON THE FIRST CAUSE OF ACTION:**

1. For actual damages according to proof at trial;
2. For damages for lost profits and goodwill in a sum according to proof at trial pursuant to 15 U.S.C. § 1125;
3. For attorney's fees for wrongful, willful and deliberate action under 17 U.S.C. § 1051, et seq.;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

**ON THE SECOND CAUSE OF ACTION:**

1. That Defendant, its agents, servants, officers, directors, employees, representatives and each of them, be enjoined during the pendency of this action and permanently thereafter from using the mark "Live Resin" in any manner, and from the following activities;
2. Soliciting and/or selling products or services by use of the name of "Live Resin";
3. Using the "Live Resin" trademark; and
4. Publishing or distributing advertisements or articles using the term "Live Resin."

**ON THE THIRD THROUGH FOURTH CAUSES OF ACTION**

1. For general and special damages in a sum according to proof at trial;
2. For an award of damages equal to the profit realized from Defendant's conduct, as alleged;
3. For prejudgment interest thereon according to law;
4. For punitive damages pursuant to Civil Code § 3294;
5. For costs of suit incurred herein; and
6. For such other and further relief as the Court deems just and proper.

**ON THE FIFTH CAUSE OF ACTION**

1. Declaring that CENTRAL COAST has no trademark interest in the term "Live Resin";
2. That PURBLACK has incontestable trademark rights in LIVE RESIN;

-11-
COMPLAINT

3. That all trademarks filed by CENTRAL COAST which contain the term "Live Resin" are invalid and should be abandoned; and

4. Enjoining Defendant, preliminarily and permanently, from interfering with PURBLACK's rights in its LIVE RESIN Trademarks.

DATED: December 18, 2025          RIMON PC


By: s/ Lisel M. Ferguson
     Lisel M. Ferguson
     Attorneys for Plaintiff
     PURBLACK, INC. a Texas corporation

-12-
COMPLAINT