**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PURBLACK, INC.,<br>Plaintiff,<br>v.<br>CENTRAL COAST AGRICULTURE, INC.,<br>Defendant. | Case No.: 25-cv-03654-H-MMP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 6.] |

On December 18, 2025, Plaintiff PurBlack, Inc. ("Plaintiff") filed a complaint against Central Coast Agriculture, Inc. ("Defendant"). (Doc. No. 1.) On May 11, 2026, Defendant filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 6.) On June 25, 2026, Plaintiff filed a response to Defendant's motion to dismiss. (Doc. No. 7.) On July 20, 2026, Defendant filed a reply. (Doc. No. 8.) On August 6, 2026, the Court took the matter under submission. (Doc. No. 10.) For the reasons below, the Court grants in part and denies in part Defendant's motion to dismiss.

**<u>Background</u>**

The following factual background is taken from the allegations in Plaintiff's complaint.

Plaintiff is a Texas corporation with its principal place of business in San Diego County, California. (Doc. No. 1, Compl. ¶ 3.) Defendant is a Delaware corporation with its principal place of business in Santa Barbara County, California. (Id. ¶ 4.)

Plaintiff sells various products under the trademark LIVE RESIN, including "high quality natural nutritional supplements engineered for peak performance." (Id. ¶¶ 5, 6.) Plaintiff owns three United States Patent and Trademark Office ("USPTO") registrations for the mark "LIVE RESIN": Registration No. 4643806 (Class 5, dietary supplements, health food supplements, nutritional supplements and mineral supplements), issued November 25, 2014; Registration No. 7342152 (Class 1, plant extract ingredients used in a wide variety of goods), issued April 2, 2024; and Registration No. 7198610 (Class 3, skincare preparations), issued October 24, 2023—each with a first use date of September 9, 2012. (Id. ¶ 9.)

Defendant uses the term "Live Resin" to sell its products and has filed numerous trademark applications with the USPTO incorporating this mark in Classes 003, 030, and 034. (Id. ¶¶ 10, 17.) Defendant's website, located at www.rawgarden.farm, markets products using the LIVE RESIN mark. (Id. ¶ 10.)

Starting in August 2021, Plaintiff has sent multiple cease and desist letters to Defendant, requesting that Defendant cease using the mark "Live Resin." (Id. ¶¶ 13, 18.) Defendant has refused to cease its infringing use. (Id. ¶ 13.) On October 4, 2022, Plaintiff filed Oppositions against Defendant's marks before the Trademark Trial and Appeal Board ("TTAB"). (Id. ¶ 18.) Plaintiff is currently opposing two of Defendant's marks before the TTAB: REFINED LIVE RESIN, Serial Nos. 88983040 and 88983042, both in Class 030. (Id. ¶ 19.) Defendant has filed responses to Office Actions before the USPTO, disclaiming the term "Live Resin" as descriptive. (Id. ¶ 20.)

Plaintiff alleges that many of its customers and potential customers have complained about confusion between Plaintiff's and Defendant's products and that association with Defendant's cannabis products is harmful to Plaintiff's reputation as a seller of high-end nutritional supplements. (Id. ¶ 14.) Plaintiff claims to have already suffered irreparable

damage and lost profits because of Defendant's acts. (Id. ¶ 23.) Defendant has knowingly and willfully continued its infringing conduct despite multiple demands to cease. (Id. ¶¶ 13, 37–38.)

On December 18, 2025, Plaintiff filed a complaint against Defendant, alleging claims for: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) Unfair Competition under 15 U.S.C. §§ 1114, 1125(a); (3) Injunctive Relief under 15 U.S.C. § 1116; (4) Unfair Competition and Trademark Infringement under Cal. Bus. & Prof. Code § 17200;[1] and (5) Declaratory Relief. (Id. ¶¶ 25-51.) Defendant waived service on March 10, 2026. (Doc. No. 5.) On May 11, 2026, Defendant filed the present motion, moving pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's complaint in its entirety for failure to state a claim. (Doc. No. 6.)

## Discussion

### I. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to give the defendant fair notice of the claim and its grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial

---

[1] In its Motion to Dismiss, Defendant notes that Plaintiff's fourth claim, a violation of Cal. Bus. & Prof. Code § 17790, does not exist. (Doc. No. 6 at 15.) Plaintiff clarifies that "§ 17790" was "mistyped" and should be "§ 17200." (Doc. No. 7 at 13.) The proper remedy for an incorrect citation is not dismissal. The Court will address Plaintiff's fourth claim as asserting a violation under Cal. Bus. & Prof. Code § 17200.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010). Dismissal without leave to amend is proper if the complaint cannot be saved by amendment. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

## II. Analysis

### A. Claims 1, 2, and 4: Trademark Infringement and Unfair Competition under Federal and California Law

To maintain an action for trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), and unfair competition under California law, a plaintiff must prove a protectible ownership interest in the mark and that defendant's use of the same or similar mark would create a likelihood of consumer confusion. Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011);

see also Murray v. Cable Nat'l. Broad. Co., 86 F.3d 858, 860 (9th Cir. 1996) (citing Tomlin v. Walt Disney Productions, 18 Cal.App.3d 226, 235 (1971) (California claims)).

As to the first element, Plaintiff has satisfied its burden by demonstrating a valid ownership interest in the LIVE RESIN mark. Plaintiff holds three federal registrations for LIVE RESIN and, as such, is entitled to a presumption of validity. See 15 U.S.C. § 1057(b), 1115(a). Plaintiff has submitted documentation showing that it is the owner of the federal registered marks for LIVE RESIN. (See Doc. No. 1., Compl. ¶ 9; Doc. No. 1-2, Ex. A.) Defendant does not contest Plaintiff's ownership of those marks or challenge the validity of those registrations. Accordingly, Plaintiff has established the first element of its trademark infringement claim.

As to the second element, a likelihood of confusion exists when a consumer viewing a marked good is likely to purchase the good under a mistaken belief that the good is, or associated with, the good of another provider. See Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987). The confusion must "be probable, not simply a possibility." Id. The Ninth Circuit has set forth eight factors a court should consider in determining whether two marks are confusingly similar. AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir.1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003). The Sleekcraft factors are: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. Punchbowl, Inc. v. AJ Press, LLC, 90 F.4th 1022, 1027 (9th Cir. 2024) (quoting Sleekcraft, 599 F.2d at 348–49).

**1. Proximity of Goods and Marketing Channels**

Plaintiff has alleged sufficient facts under the "proximity of goods" factor. The test for related goods or services is whether the two products "would be reasonably thought by the buying public to come from the same source if sold under the same mark." Rearden LLC v. Rearden Com., Inc., 683 F.3d 1190, 1212 (9th Cir.

2012) (quoting Sleekcraft, 599 F.2d at 348 n.10). "To determine whether goods are related, courts may consider whether the goods are complementary, whether the products are sold to the same class of purchasers, and whether the goods are similar in use and function." Groupion, LLC v. Groupon, Inc., 859 F. Supp. 2d 1067, 1074 (N.D. Cal. 2012). A plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor." Ironhawk Techs., Inc. v. Dropbox, Inc., 2 F.4th 1150, 1163 (9th Cir. 2021) (quoting Rearden, 683 F.3d at 1212).

Defendant contends that Plaintiff's goods are unrelated to its goods since the parties occupy different regulatory regimes, different retail channels, and different use cases. (Doc. No. 6 at 10, 12.) Defendant notes that Plaintiff's own registrations expressly disclaim any connection to cannabis or CBD. (Id.) (citing Doc. No. 1, Compl. ¶ 9.) Plaintiff responds that the goods are related as Plaintiff and Defendant both "sell ingestible products marketed to health-conscious consumers" online and nationwide under an "identical mark." (Doc. No. 7 at 10, 12; Doc. No. 1, Compl. ¶ 2, 4, 6, 10.) Plaintiff sells supplements including plant-extract ingredients and skincare preparations. (Doc No. 1, Compl. ¶ 9.) Meanwhile, Defendant sells products incorporating plant extracts, including CBD products. (Doc. No. 7 at 10.) Plaintiff asserts these products categories are far closer than Defendant suggests, and the question of their relatedness is a factual one that cannot be resolved on pleadings alone. (Id.)

The Court agrees with Plaintiff. At a high level of abstraction, there are similarities between the two parties' offerings. Both concern ingestible products incorporating plant extracts marketed to health-conscious consumers. Both parties also have approved or pending trademark applications in Class 030, suggesting there may be overlap in their class of purchasers. (Doc. No. 1, Compl. ¶¶ 9, 17, 19.) Based on these similarities, a reasonable jury could find that Plaintiff's goods and Defendant's goods are related, sold to similar classes of purchasers, or similar in use and function. "While some courts have decided fact-specific issues regarding trademark protection at the pleading stage, they generally have done so only where the complaint suffers from a complete failure to state a plausible

basis for trademark protection." Pinterest Inc. v. Pintrips Inc., 15 F. Supp. 3d 992, 999 (N.D. Cal. 2014). Here, Plaintiff has sufficiently alleged a proximity of goods that provide a plausible basis for its trademark claims.

**2. Strength of Mark Factor**

The Court turns next to the strength of Plaintiff's LIVE RESIN mark. As a general matter, "[t]he more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir.2000). A mark's strength is evaluated conceptually and commercially. Id. Marks are placed in one of five categories, ranging from weakest to strongest: generic, descriptive, suggestive, arbitrary, and fanciful. Id. Generic marks "refer[] to the genus of which the particular product is a species" and "are not registerable" as trademarks. Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985). Descriptive marks "describe[] the qualities or characteristics of a good or service" and only receive protection if they acquire secondary meaning. Id. Suggestive marks require a consumer to "use imagination or any type of multistage reasoning to understand the mark's significance" and automatically receive protection. Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1114 (9th Cir. 2010) (quotation marks omitted). Arbitrary marks are actual words with no connection to the product (i.e. Apple computers), and fanciful marks are made-up words with no discernable meaning (i.e. Kodak film), receiving "maximum trademark protection." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002). The line between descriptive and suggestive marks is nearly incapable of precise description. Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1197 (9th Cir. 2009) ("[L]egions of trademark lawyers can stay busy arguing about how marks in the middle, not so plainly descriptive, nor so plainly [suggestive], should be categorized.").

Here, Defendant claims the term "live resin" when applied to the cannabis industry is generic and descriptive. (Doc. No. 6 at 12, 13.) Plaintiff admits that the mark has "primary and descriptive significance" but alleges that the mark has acquired a "secondary

meaning". (Doc. No. 1, ¶ 45.)

Plaintiff's federal registration of its trademark entitles Plaintiff to a "strong presumption" that the mark is not generic and shifts the burden to Defendant to show "by a preponderance of the evidence" that the mark is not protectable. Zobmondo, 602 F.3d at 1113, 1114 (quoting KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 604 (9th Cir.2005); citing Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 783 (9th Cir.2002)). Ninth Circuit precedent makes clear that the presumption of validity is difficult to overcome. Id. at 1115 ("[T]he presumption of validity is a strong one, and the burden on the defendant necessary to overcome that presumption … is heavy."). Defendant's contention that the mark is generic and descriptive raises issues that should not be resolved on a motion to dismiss. See Bratt v. Love Stories TV, Inc., 713 F.Supp.3d 847, 862 (S.D. Cal. 2024) (citing McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1359 (Fed. Cir. 2007) (reversing Rule 12(b)(6) dismissal where the district court found "International Walkie Talkie" to be generic "because whether a term is generic is a question of fact")); cf. Solid 21, Inc. v. Breitling USA, Inc., 512 F. App'x 685, 686–87 (9th Cir. 2013) (unpublished) ("Breitling's contention that the mark is, in fact, generic is an attempt to introduce evidence to rebut the complaint, which is impermissible at the motion to dismiss stage.").

Further, if Plaintiff's mark is not inherently distinctive, the mark may still be enforceable if it has acquired secondary meaning as Plaintiff alleges. See Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 820 (9th Cir. 1980). This inquiry is premature when raised at the motion to dismiss stage. See, e.g., Le v. Huynh, 2023 WL 3763801, at *2 (N.D. Cal. May 31, 2023); Sugarfina, Inc. v. Sweet Pete's LLC, 2017 WL 4271133, at *5 (C.D. Cal. Sept. 25, 2017) ("However, in arguing that the marks are generic, Defendants ignore the 'widely-shared stance that a Rule 12(b)(6) motion is generally an improper vehicle for establishing that a mark is generic or functional.'" (quoting Pinterest, 15 F. Supp. 3d at 998–99)). Merely pleading that the plaintiff has used the mark and defendant

has misappropriated the mark is sufficient to adequately plead that the mark has acquired a secondary meaning. Sugarfina, 2017 WL 4271133, at *5.

Thus, while a court may consider judicially noticeable facts in resolving a motion to dismiss, the inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence. Breitling, 512 F. Supp. at 687. Accordingly, based on the pleadings, Plaintiff has adequately pleaded that it has an enforceable mark with secondary meaning.

**3. Similarity of Marks Factor**

The "similarity of the marks" factor considers the marks in their entirety, as they appear in the marketplace. GoTo.com, Inc., 202 F.3d at 1206. Similarities between the marks are weighed more heavily than differences. Id. Defendant argues it uses "REFINED LIVE RESIN" as part of composite marks, not as a standalone brand. (Doc. No. 6 at 13). Plaintiff claims Defendant's use of LIVE RESIN as a "composite mark" does not eliminate the similarity. (Doc. No. 7 at 11.)

The Court agrees with Plaintiff. As both parties acknowledge, both marks are facially similar and contain similar text ("LIVE RESIN"). (Id. at 13; Doc. No. 7 at 11.) While Defendant does not use "LIVE RESIN" as a standalone brand, courts have found that allowing entities to infringe with impunity so long as they use a different house mark would lead to absurd consequences. See Tigi Linea Corp v. Cool Freakin Genius LLC, 2026 WL 84406, at *7 (citing adidas Am., Inc. v. Skechers USA, Inc., 890 F.3d 747, 758 n.5 (9th Cir. 2018) ("[A] trademark may not be freely appropriated so long as the user also includes its own logo.")). For these reasons, Plaintiff has sufficiently alleged facts that support finding this element favors likelihood of confusion.

**4. Actual Confusion and Degree of Care Exercised When Purchasing**

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 634 (9th Cir. 2005). Evidence of actual confusion by consumers is

strong evidence of likelihood of confusion. See Rodeo Collection, 812 F.2d at 1219; Karl Storz Endoscopy-America, Inc. v. Surgical Tech., Inc., 285 F.3d 848, 854 (9th Cir. 2002).

Defendant advances that both product categories involve consumers exercising heightened care: "supplement purchasers research ingredients and health effects, and cannabis purchasers are generally required to present identification and make purchases through licensed sellers." (Doc. No. 6 at 14.) Plaintiff does not address the degree of care factor but notes that customers "have already complained to Plaintiff stating that they were confused as to the difference between Plaintiff's and Defendant's Products." (Doc. No. 1, Compl. ¶ 14.) Given the paucity of information available at the pleading stage regarding degree of care and actual confusion, these factors weigh neither in favor of nor against a likelihood of confusion.

**5. Intent and Likelihood of Product Expansion**

The Ninth Circuit has repeatedly held that the remaining factors— "defendant's intent in selecting the mark" and "likelihood of expansion," Sleekcraft, 599 F.2d at 348–49 —are not necessary to find a likelihood of confusion. Pom Wonderful v. Hubbard, 775 F.3d 1118, 1131 (9th Cir. 2014) ("[E]vidence of the defendant's intent to confuse customers or of product expansion is not required for a finding of likelihood of confusion.")).

Similar to the factors of actual confusion and degree of care, these factors weigh neither in favor of nor against a likelihood of confusion given the lack of information at the present pleading stage. "[B]ecause a 'careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record,'" dismissal of trademark disputes at the pleading stage is generally disfavored. Trader Joe's Co. v. Trader Joe's United, 150 F.4th 1040, 1049 (9th Cir. 2025) (citing Yuga Labs, Inc. v. Ripps, 144 F.4th 1137, 1167 (9th Cir. 2025) (quoting Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 901–02 (9th Cir. 2002))). The Ninth Circuit has often recognized that many trademark infringement suits are not suitable for resolution at this early of a stage. See, e.g., Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1075 (9th Cir. 2006) ("Because the likelihood of confusion is often a fact-intensive inquiry,

courts are generally reluctant to decide this issue at the summary judgment stage."); Rearden LLC, 683 F.3d at 1210 ("Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored.").

Thus, the Court is unpersuaded by Defendant's Rule 12(b)(6) challenge to Plaintiff's trademark infringement claims. Plaintiff has alleged sufficient facts to state plausible claims for trademark infringement. In particular, Plaintiff has alleged that the parties' marks are similar, are used on similar types of goods, and that their goods are marketed through the same channels and target similar customers. (Doc. No. 1, Compl. ¶ 14.) Plaintiff has also alleged instances of actual confusion. (Id. ¶ 140.) These alleged facts plausibly show a likelihood of confusion and are enough to survive Defendant's challenge. See, e.g., Sugarfina, Inc., 2017 WL 4271133, at *5. Consequently, the Court denies Defendant's motion to dismiss Plaintiff's trademark infringement claims.

**B. Claim 5: Declaratory Relief**

Plaintiff seeks a judicial determination that Defendant "has no trademark interest" in the term "LIVE RESIN" and that Plaintiff "has the right to use its LIVE RESIN Trademarks free of any claims of Defendant." (Doc No. 1, Compl. ¶¶ 50, 51.) Defendant moves to dismiss this claim, asserting that declaratory relief is "duplicative" of its other causes of action and the issues will be litigated as part of Plaintiff's trademark infringement and unfair competition claims. (Doc. No. 6 at 16.) Plaintiff rebuts that declaratory relief is not coextensive with damages and injunctive relief, rather it "establishes the parties' respective trademark rights with prospective effect, particularly relevant given the pending TTAB proceedings and [Defendant's] continued filing of trademark applications." (Doc. No. 7 at 13; Doc. No. 1, Compl. ¶¶ 19–20.)

"[D]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa., 873 F.2d

229, 231 (9th Cir. 1989) (internal quotation marks and citation omitted).

Plaintiff, through its claim for declaratory relief, seeks a legal declaration that: (1) "[Defendant] has no trademark interest in the term "Live Resin"; (2) "[Plaintiff] has incontestable trademark rights in LIVE RESIN"; (3) "all trademarks filed by [Defendant] which contain the term "Live Resin" are invalid and should be abandoned"; and (4) Plaintiff has the "right to use its LIVE RESIN Trademarks free of any claims of Defendant." (Doc. No. 1, Compl. ¶¶ 50, 51.) Through its claims for federal trademark infringement and unfair competition, Plaintiff seeks damages based on its contention that Defendant's use of "Infringing Marks will confuse and deceive the public into thinking that the goods sold by Defendant are Plaintiff's good and/or produced by Plaintiff." (Id. ¶ 27, 33, 47.)

These claims may not be coextensive. For example, whereas Plaintiff's declaratory relief claim concerns its entitlement to a legal declaration of its rights and obligations with respect to the term "Live Resin", Plaintiff's trademark infringement claims concern its entitlement to damages based on Defendant's trademark infringement violations. Similarly, while portions of Plaintiff's declaratory relief focus only on Defendant's actions, Plaintiff's trademark infringement claims focus on the effects and consequences of those actions. In this way, the simultaneous adjudication of both claims would involve different inquiries and present a low risk of "duplicative litigation." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011).

Further, even if Plaintiff's claims are slightly duplicative, the adjudication of both could "serve a useful purpose in clarifying the legal relations at issue." Id.; see, e.g., Steen v. Am. Nat'l Ins. Co., 609 F. Supp. 3d. 1066, 1073 (C.D. Cal. 2022). Although Plaintiff's declaratory relief and trademark infringement claims could both result in a determination that Defendant's actions constitute infringement, only Plaintiff's declaratory relief claim carries that idea one step forward by asking whether Defendant is obligated to withdraw and cease its filing of trademark applications. That question speaks to the future obligations of the parties, an issue that may not be addressed by Plaintiff's trademark

infringement claim. For the foregoing reasons, the Court denies Defendant's motion to dismiss Plaintiff's claim for declaratory relief.

**C. Claim 3: Injunctive Relief Under Lanham Act, 15 U.S.C. § 1116**

Defendant argues that the remaining claim for injunctive relief must be dismissed because injunctive relief is a remedy, not an independent claim. (Doc. No. 6 at 16.) Defendant notes that Plaintiff has already demanded injunctive relief in its complaint so dismissal of this procedurally improper claim may not have any actual effect on Plaintiff's remedies in this action. (Id. at 16, 17.) Plaintiff acknowledges Defendant's argument and asserts that, "to the extent the Court considers the Third Cause of Action to be a remedy rather than a standalone claim, [Plaintiff's] right to injunctive relief is fully preserved through its other causes of action." (Doc. No. 7 at 15.)

Indeed, injunctive relief is not an independent claim, rather it is a form of relief. See, e.g., Wye v. Barclays Bank PLC, 2026 WL 135481, at *9 (C.D. Cal. 2026) ("[T]he Court does not foreclose injunctive relief or damages as a remedy but merely recognizes the well-settled rule that these are not standalone claims"); Roshan v. Lawrence, 689 F. Supp. 3d 697, 702 n.2 (N.D. Cal 2023) ("[I]njunctive relief [is] not [a] standalone claim[]."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action." (citation omitted)). However, as both parties note, a pleading can request injunctive relief in connection with a substantive claim. Here, Plaintiff proffers the Lanham Act, 15 U.S.C. § 1116 as the basis for its claim for injunctive relief. (Doc. No. 1, Compl. ¶¶ 36-39.) Plaintiff's complaint states plausible trademark infringement claims that entitle it to the injunctive remedy it seeks. Accordingly, the Court grants Defendant's Motion as to Plaintiff's third claim for injunctive relief. In doing so, the Court does not foreclose injunctive relief or damages as a remedy.

**D. Plaintiff's Request for Treble Damages Under 15 U.S.C. § 1117(b)**

Section 1117(b) authorizes statutory and treble damages for counterfeiting. 15 USC § 1117(b); Arcona, Inc. v. Farmacy Beauty, LLC, 976 F.3d 1074, 1078 (9th Cir. 2020).

Under the Lanham Act, a "counterfeit" is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Defendant claims Plaintiff does not allege counterfeiting in its complaint and is not entitled to treble damages under Section 1117(b). (Doc. No. 6 at 17.) Plaintiff contends its complaint alleges that Defendant uses a mark identical to Plaintiff's and does so "knowingly and willfully despite multiple cease-and desist demands and pending opposition proceedings." (Doc. No. 7 at 14; Doc. No. 1 ¶¶ 13, 18, 37.) Further, Plaintiff argues whether Defendant's use constitutes "counterfeiting" within the meaning of § 1117(b) is a factual determination that cannot be resolved at the pleading stage.

While Plaintiff's complaint alleges Defendant's use of "confusingly similar" and "deceptively similar" marks as Plaintiff, those allegations are insufficient as "confusingly similar" and "deceptively similar" are not the same as "identical with, or substantially indistinguishable from". 15 U.S.C. § 1127. Moreover, comparing the marks provided in Plaintiff's complaint, Defendant uses an entirely different word ("Refined") at the beginning of the mark." (Doc. No. 1, Compl. ¶ 9, 19; <u>compare also</u> Doc. No. 1-2, Ex. A <u>with</u> Doc. No. 1-4, Ex. C.). Plaintiff therefore cannot plausibly allege that the two marks are identical or substantially indistinguishable. <u>See, e.g.</u>, <u>Playvision Labs, Inc. v. Nintendo of America, Inc.</u>, 2015 WL 12941892, at *1 (N.D. Cal. May 18, 2015) ("Defendant's 'Wii Play Motion' name differs from the 'playmotion!' name by using, among other things … an entirely different word ("Wii") at the beginning of the mark"); <u>Emeco Indus., Inc. v. Restoration Hardware, Inc.</u>, 2012 WL 6087329, at *1 (N.D. Cal. Dec. 6, 2012) ("1940s Naval Chair" and "Introducing 1940S Naval Chair Collection" not identical or substantially indistinguishable from "The Navy Chair" or "111 Navy Chair"). Further, Plaintiff's claims for federal trademark infringement and California common law trademark infringement are devoid of any explicit allegations of counterfeiting.

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's request for treble damages. <u>See</u> <u>Playvsion Labs</u>, 2015 WL 12941892, at *1 n.1 (holding relief for treble damages under 15 U.S.C. § 1117(b) is only triggered when there are

allegations to support a counterfeiting claim).

**E. Timeliness of Defendant's Motion**

Federal Rules of Civil Procedure 4(d)(3) states that a defendant who waives service of process "need not serve an answer to the complaint until 60 days after the request was sent." Fed. R. Civ. P. 4(d)(3). When computing a time period stated in days, the Court excludes the day of the event that triggers the period. Fed. R. Civ. P. 6(a)(1)(A). When the last day of a period falls on a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

In its opposition, Plaintiff asserts that Defendant's motion to dismiss should be denied because it is untimely. (Doc. No. 7 at 5, 16.) Plaintiff asserts that Defendant waived service on March 10, 2026, thereby triggering a 60-day deadline to file a responsive pleading or Rule 12 motion. (Id.) Plaintiff claims the deadline for Defendant's motion expired on May 9, 2026, but Defendant's motion was not filed until May 11, 2026, two days after the deadline expired. (Id.) Defendant counters, claiming Plaintiff's calculation is incorrect. (Doc. No. 8 at 4.) Defendant contends the 60-day period began on March 11, 2026 pursuant to Fed. R. Civ. P. 6(a)(1)(A). (Doc. No. 8 at 4.) 60 days from March 11, 2026 is Sunday, May 10, 2026. (Id.) Because May 10, 2026 was a Sunday, Defendant asserts the deadline extended to Monday, May 11, 2026, the date Defendant filed its motion. (Id.)

The Court concludes that the motion to dismiss is timely filed. Even if the 60-day clock began on March 10, 2026 as Plaintiff alleges, the 60-day deadline still falls on a weekend date, Saturday, May 9, 2026, extending the deadline to Monday, May 11, 2026 pursuant to Fed. R. Civ. P. 6(a)(1)(C). Thus, because Defendant filed the present motion on May 11, 2026, Defendant's motion to dismiss is timely filed.

**F. Civil Local Rule 7.1**

In its opposition, Plaintiff also alleges Defendant failed to comply with Civil Local Rule 7.1(a) of the United States District Court for the Southern District of California, (Doc.

No. 7 at 8), but Civil Local Rule 7.1(a) does not contain the language referenced by Plaintiff. See S.D. Cal. Civ. L.R. 7.1(a). Thus, Defendant's filing of its motion to dismiss did not violate that local rule.

**Conclusion**

For the reasons above, the Court grants in part and denies in part Defendant's motion to dismiss. The Court denies Defendant's motion with respect to claims: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) Unfair Competition under 15 U.S.C. §§ 1114, 1125(a); (4) Unfair Competition and Trademark Infringement under Cal. Bus. & Prof. Code § 17200, and (5) Declaratory Relief.[2] (Id. ¶¶ 25-51.) The Court grants Defendant's motion with respect to Plaintiff's claim for (3) Injunctive Relief under 15 U.S.C. § 1116 and Plaintiff's request for treble damages under 15 U.S.C. § 1117(b). Defendant must file an answer to the Complaint within 30 days of the date of this order.

**IT IS SO ORDERED.**

DATED: August 12, 2024

Marilyn L. Huff

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

[2] Because the Court does not rely on Defendant's documents in reaching its conclusion on Defendant's Motion to Dismiss with respect to claims 1, 2, and 4, the Court will not address Defendant's request for judicial notice.